UWEIMER, J.
On August 4, 1997, in Suit No. 97-10504 E in the Twenty-Second Judicial District Court for the Parish of St. Tammany, judgment was rendered in favor of *985 Rodney J. Strain, Jr., Sheriff of St. Tammany Parish and Ex-Officio Tax Collector (Sheriff) and against defendants Premier Video, Inc. (Premier) and Georgia L. Clesi. On February 5, 1998, the defendants filed an “Exception” in the same suit, alleging lack of service of the Sheriffs suit against them, and urging that the judgment be annulled. On March 4, 1998, the defendants filed a “Petition for Nullity of Judgment” in the same suit,[1] reiterating the allegations of lack of service. On October 16, 1998, judgment was rendered by the trial court annulling the August 4, 1997 judgment.
The Sheriff appeals. Finding the trial court judgment correct as a matter of law, we affirm.
BACKGROUND
This litigation was initiated on February 3, 1997, when the' Sheriff filed a petition for delinquent taxes and closure of business, naming Premier and Mrs. Clesi as defendants. Thereafter, counsel for the Sheriff procured an order for the appointment of a private process server, pursuant to LSA-C.C.P. art. 1293. The order named Von H. Magee.
By letter dated July 11, 1997, counsel for plaintiff requested a preliminary default be entered, stating that service had been made on May 27, 1997. An affidavit of the amount due, executed by the collection manager for St. Tammany Parish, was filed in the record on July 17, 1997. A default judgment in favor of the Sheriff and against the defendants was “read, rendered, and signed” on August 4,1997.
laOn April 22, 1998, trial on the merits of the petition for nullity was held, but the matter was left open for the taking of depositions.[2] On July 27, 1998, the deposition of Pamela Houlette was taken. She testified Mr. Von Magee had hired her to effect service upon Mrs. Clesi, which she did at Mrs. Clesi’s place of employment, East St. John High School. When shown a return of service dated May 27, 1997, and signed “Von H. Magee,” Ms. Houlette testified that was the “approximate date” she made personal service on Mrs. Clesi in the office at the school. The citation, return of service, and original petition are attached to Ms. Houlette’s deposition which was entered into the record.[3]
*986 On October 16, 1998, the triai court rendered judgment annulling the default judgment for the reasons set forth by the court on September 20, 1998. In reasons for judgment, the trial court found for a fact that: Mr. Von Magee was the person named by the court to make service pursuant to LSA-C.C.P. art. 1293; Mr. Von Magee hired Ms. Houlette to make service for him; Ms. Houlette made personal service on Mrs. Clesi; and Mrs. Cle-si had actual notice of the Sheriffs suit.[4] However, the court noted Louisiana jurisprudence to the effect that an individual appointed by the court as a |4private process server cannot delegate his duties to make service to another person, even an employee. On the basis of lack of service according to law, the trial court found the original judgment was a nullity.
On appeal, the Sheriff urges the following errors:
1. The trial court erred in finding the judgment a nullity due to improper service.
2. The trial court erred in failing to find that defendant’s [sic] action for nullity was barred because the judgment had been executed upon.
3. The trial court erred in refusing to admit evidence showing that the judgment had been executed upon.
DISCUSSION

Service of Process:

We agree with the jurisprudence cited by the trial court which supports the conclusion that a special process server, appointed by the court pursuant to LSA-C.C.P. art. 1293, may not delegate authority to another.
In Guaranty Energy Corporation v. Carr, 490 So.2d 1117, 1120 (La.App. 5 Cir. 1986), the court held that a court-appointed process server could not delegate his authority to another even though the appointed individual remained present when the citation and petition were tendered; service under such circumstances was invalid. The court noted the issue was res nova in Louisiana.[5] Our colleagues on the fifth circuit court noted there is no statutory or codal provision for the delegation of the authority vested in the appointed process server by the court. The Sheriff in the instant case has cited none.
Additionally, in Brickman v. Screven County Hospital Authority, 599 So.2d 427, 428 (La.App. 4 Cir.1992), the president of a detective agency was appointed to make service, but service was actually made by an employee of the president of the agency. Citing Guaranty Energy Corporation, the fourth circuit held service was 1^invalid, noting that in Louisiana, although a special process server may be appointed, the appointed person cannot delegate his authority to another.
We agree with the fourth and fifth circuits that LSA-C.C.P. art. 1293 envisions a court-appointed process server and does not authorize subsequent delegation by the appointed person to another. If the service was to be made by an employee, the employee should have been appointed by the court. The statute contemplates that the court controls who is assigned the duty to make service. The court decides who can make service and thus can control who has an appropriate level of competence to discharge this function. To decide otherwise would incorrectly relieve the court of *987 the statutorily granted authority to determine who is to make service.

Execution of Judgment:

The remaining assignments of error are related to the Sheriffs argument that, because of the provisions of LSA-C.C.P. art. 2003, Premier and Ms. Clesi were barred from asserting the nullity of the original judgment pursuant to LSA-C.C.P. art. 2002. The two articles provide in pertinent part:
Art.2002. Annulment for vices of form; time for action
A. A final judgment shall be annulled if it is rendered:
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
B. Except as otherwise provided in Article 2003, an action to annul a judgment on the grounds listed in this Article may be brought at any time.
Art. 2003. Same; action lost through acquiescence
A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002.
lain his brief on appeal, the Sheriff asserts the defendants did nothing to stop the “execution of the judgment through the closing of the video stores, seizure of its assets, seizure of her savings account and garnishment of her wages.” In support of his argument to the trial court that Article 2003 barred the action for nullity, the Sheriff introduced several documents. Our review of the record convinces us the trial court, in considering those documents, did not err in finding there had been no execution of judgment.
First, finding there was a pending seizure, but no sale, the trial court cited Spinks v. Caddo-Bossier Services, Inc., 270 So.2d 604 (La.App. 2 Cir.1972), as authority for holding the filing of an injunction to bar the sale was not a prerequisite to the filing of a petition to annul the judgment. The trial court’s interpretation of LSA-C.C.P. art. 2003 is consistent with the well established principle that nullity of a judgment rendered without citation can be demanded at any time 'by anyone interested if judgment has not been executed. Wilson v. King, 227 La. 546, 552, 79 So.2d 877, 879 (1955). It cannot be said that a defendant has failed to attempt to enjoin the enforcement of a judgment so long as the right to enjoin still exists. Injunctive relief is available until the property seized is actually sold. Article 2003 bars an action to annul a judgment only where the defendant has allowed execution, that is, seizure and sale, without at tempting to enjoin enforcement of the judgment. Spinks, 270 So.2d at 606-607.
The trial court correctly applied the well established interpretation of Article 2003 to the facts of the instant case regarding the seizure of the assets of Premier.
The same legal principles apply to the seizure of Ms. Clesi’s bank account and garnishment of her wages. Execution by seizure or by garnishment begins with a writ of fieri facias, but the issuance of the writ or even seizure under the writ cannot be “execution” within Article 2003 because one never served with process might have no notice until the seizure occurs; seizure cannot rationally constitute both the first notice |7of execution and the extinguishment of the right to enjoin execution. Therefore, the legislative intent of Article 2003 cannot reasonably be to deny the action of nullity to a defendant merely because she was present in the parish when the writ issued or seizure occurred. Article 2003 estops a defendant present in the parish at the time of the judgment’s execution only where execution has been *988 completed, that is, where garnishment not only has arrested funds in the hands of the garnishee but has obliged the delivery of the funds through the sheriff to the judgment creditor. Custom Acceptance Corporation v. Paul, 376 So.2d 510, 513 (La.App. 4 Cir.1979). See also, Bryant v. Pierson, 583 So.2d 97, 99 (La.App. 3 Cir.1991) (two garnishment proceedings were not executions of judgment of such a nature as to estop the defendants from attacking the validity of- the judgment against them).
Furthermore, we find no merit in the Sheriffs argument on appeal that the trial court erred in excluding the two documents the Sheriff proffered. Those documents were a check dated March 26, 1998, by the Sheriff of St. John the Baptist Parish turning over monies from a garnishment in that parish, and a March 30, 1998 ledger entry of the Sheriff of St. Tammany parish showing he had received those funds. Both of those documents were generated after Premier and Ms. Clesi had filed their petition for nullity of judgment. Thus, under the jurisprudence previously discussed, the proffered documents were not relevant to the issue of execution of the judgment.
CONCLUSION
Accordingly, we find no merit to the Sheriffs arguments on appeal, and we affirm the judgment annulling the previous judgment in his favor. We cast the Sheriff with costs in the amount of $454.00.
AFFIRMED.
FITZSIMMONS, J., concurs in the result, and assigns reasons.

. A judgment may be either relatively or absolutely null. Louisiana Code of Civil Procedure article 2002 lists specific vices of form, including lack of service, that render a judgment absolutely null. Absolutely null judgments may be attacked collaterally, at any time, by rule or by any other method. Hebert v. Hebert, 96-2155, p. 3 (La.App. 1 Cir. 9/19/97), 700 So.2d 958, 959.

. The judgment which is before us on appeal states the matter was left open for the taking of depositions of Von Magee and Pamela Houlette. Apparently, Mr. Magee’s deposition was not taken before the matter was submitted for decision, as it is not of record.

. We note there are serious deficiencies in the record. Although there is a letter requesting the entry of a preliminary default, which lists the date of service of citation, there are no notes of evidence, minutes of court, or other documents showing that the default judgment was confirmed and that the return of service was entered into evidence at that time. The only return of service in the record pertinent to the issue in this appeal is the return of service dated May 27, 1997, signed by Mr. Von Magee, and attached to the deposition of Ms. Houlette. The other return of service, which is referred to in the Sheriffs brief, is a return of service made after the judgment which the trial court declared a nullity. Obviously, that return of service (Sheriff Exhibit # 4) does not prove the service made by Ms. Houlette. These deficiencies in the record raise doubts the plaintiff's proof was sufficient for the confirmation of a default judgment. However, although LSA-C.C.P. art. 2002(A)(2)[3] provides that a final judgment shall be annulled if it is rendered against a defendant against whom a valid judgment by default has not been taken, this article applies only to technical defects in the form of the judgment or procedure. National Income Realty Trust v. Paddie, 98-2063, p. 2 (La.7/2/99), 737 So.2d 1270, 1271. The failure to establish the prima facie case required by LSA-C.C.P. art. 1702 does not constitute a vice of form. Rather, a failure of proof must be raised in a motion for new trial or by appeal and may not be raised by an action for nullity. Id., 98-2063 at 2-3, 737 So.2d at 1271.

. Mrs. Clesi’s actual knowledge of the suit is immaterial considering the facts of the instant case. Proper citation is the foundation of all actions. A fundamental principle of law is that no valid judgment can be rendered in any case where the defendant has not been informed of the suit in strict compliance with the law. Actual knowledge of the existence of an action cannot supply the want of citation. Kimball v. Kimball, 93-1364, p. 3 (La.App. 1 Cir. 5/20/94), 637 So.2d 779, 781.

. A similar issue was raised in Tucker v. Howes, 413 So.2d 585, 587 (La.App. 1 Cir. 1982), but not decided because the matter was before this court on appeal of the original default judgment, not on an action to annul the judgment.